# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **DOUGLAS AMES and wife,** | ) | |
| **SIDNEY STROUD AMES,** | ) | |
|  | ) | |
| Plaintiffs/Appellants, | ) | Davidson Circuit No. 92C-1693 |
|  | ) | |
| **v.** | ) | |
|  | ) | Appeal No. 01A01-9701-CV-00043 |
| **PHILLIPS BUILDERS, INC.** | ) | |
|  | ) | |
| Defendant/Appellee, | ) | |
|  | ) | |

## APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE BARBARA N. HAYNES, JUDGE

For the Plaintiffs/Appellants:

D. Russell Thomas
Sonya W. Henderson
Murfreesboro, Tennessee

For the Defendant/Appellee:

Todd E. Panther
Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

# OPINION

This is a negligence case, involving the construction and repair of a residential building. The plaintiff owner of a condominium alleged that the builder's negligence resulted in the presence of a harmful microorganism in the building. The trial court granted summary judgment in favor of the builder. We affirm.

On October 30, 1989, the Plaintiff/Appellants, Sidney and Douglas Ames (the "Ameses"), purchased a newly-constructed condominium in Antioch, Tennessee, built by Defendant/Appellee Phillips Builders, Inc. ("Phillips"). The Ameses moved into their home shortly after the closing. During the winter of 1989, Mrs. Ames became ill. She felt dizzy, disoriented, nauseous, experienced blurry vision, sleeplessness, numbness and tingling in her thighs and legs, and periodic memory loss. Eventually, Mrs. Ames was diagnosed as suffering from hypersensitivity pneumonitis, a reaction to a type of bacteria called actinomycete. Environmental testing of the condominium revealed actinomycetes in the home, especially in the crawlspace under the building.

Mr. and Mrs. Ames filed suit against Phillips, asserting that Phillips' failure to construct the condominium to allow for proper ventilation of the crawlspace area led to the buildup of the actinomycete bacteria. They sought damages under several legal theories, including negligence, breach of implied warranty, and fraudulent misrepresentation.

Mr. and Mrs. Ames asserted that Mrs. Ames' illness was proximately and legally caused by high levels of actinomycete bacteria in her condominium, the result of a poorly designed crawl space. They alleged that Phillips constructed a crawl space which did not meet Southern Building Code specifications, making Phillips liable under a theory of negligence *per se*. They also contended that, even if Phillips originally had no duty to the Ameses, Phillips voluntarily undertook a duty by attempting to remedy the moisture problem in the condominium. The Ameses also maintained that Phillips violated a common law implied new home warranty and are liable for all incidental and consequential damages resulting from the breach of the implied warranty. Finally, the Ameses claimed that Mrs. Ames asked Phillips' sales representative if there had been any moisture problems in the condominium, and that the sales representative replied in the negative. The Ameses alleged that this was a misrepresentation, giving rise to a claim for fraudulent misrepresentation or inducement.

The original suit against Phillips was filed on March 21, 1991. After the initial pleadings and limited written discovery, the Ameses filed a notice of voluntary non-suit, and refiled their complaint on July 15, 1992. Phillips filed an answer and third-party complaint against Wells Fireplace & Supply, Inc. (Wells). The trial court granted Wells' motion for summary judgment, and Wells is not a party to this appeal. Phillips filed its first motion for summary judgment in November, 1993, which was denied. Subsequently, Phillips filed a second motion for summary judgment.

On Phillips' motion for summary judgment, the trial court considered the affidavit of Mrs. Ames' treating physician, Dr. John Strimas, who stated that Mrs. Ames' physical condition was a reaction to actinomycetes, caused by "living in the home built by Phillips Builders that is in question in this lawsuit." However, Dr. Strimas also acknowledged that Mrs. Ames began having medical problems before moving into the condominium.

The Ameses also submitted the testimony of a mycological expert, Kevin Kuehn, specializing in the identification and quantification of airborne microorganisms. His testimony is relied upon by both parties.

Kuehn described actinomycetes as a bacteria. Their function is to degrade plant material and other organic material:

> . . . [I]f you dig up earth, when you go out and you garden, dig up earth, that earthy smell is primarily associated with Actinomycetes. That odor, that particular odor is associated with Actinomycetes.

Kuehn acknowledged that "fungal particles are normal components of both indoor and outdoor air. . . ." However, he opined that the Ameses' residence had "a fungal contamination problem," based on tests performed on samples from the Ameses' home.

Nevertheless, on cross-examination, Kuehn admitted that he did not know if the level of actinomycetes in the Ameses' home was different from other homes in the Nashville area. He testified regarding the upper normal limit for concentration of particles of actinomycetes, and acknowledged that the level of actinomycetes in the Ameses' residence was "well below" that level. Samples on the Ameses' home were found to be below the normal acceptable limit of concentration of actinomycetes.

After consideration of the entire record, the trial court found no disputed issue of material fact and granted Phillips' motion for summary judgment. From this decision, Mr. and Mrs. Ames now appeal. The Ameses claim that the trial court erred in granting Phillips' motion for summary

2

judgment when there were genuine issues of material fact which, when viewed in a light most favorable to them, demonstrated a *prima facie* case of (1) common law negligence, (2) violation of an implied new home warranty, and (3) common law fraud and/or fraudulent inducement, as well as a claim for negligence *per se* against Phillips. Phillips also raises the following issues: (1) whether the record contains any disputed material facts creating a genuine issue that it owed the Ameses a duty; and (2) whether the record contains any disputed material facts creating a genuine issue that it proximately caused the Ameses' alleged damages.

A trial court should grant a motion for summary judgment when the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. In reviewing a trial court's grant of summary judgment, this Court must review the record in the light most favorable to the non-moving party and draw all inferences in their favor without attaching any presumption of correctness to the trial court's judgment in order to determine whether the absence of genuine issues of material fact entitled the movant to judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). This Court reviews the record *de novo*, without attaching any presumption of correctness to the trial court's action. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

The Ameses do not allege that Phillips had a duty, by agreement or otherwise, to construct a home completely free of actinomycetes. There is no allegation that Phillips had been informed, or indeed that the Ameses were aware, that Mrs. Ames was hypersensitive to actinomycetes. Under any of the legal theories asserted by the Ameses, there can be no recovery if they cannot produce evidence that the level of actinomycetes in their home was above the normal or acceptable limits. The plaintiffs cannot establish negligence without proof that Phillips breached a duty to construct a home with normal levels of actinomycetes. *See Jenkins v. CSX Transportation, Inc.*, 906 S.W.2d 460, 463 (Tenn. App. 1995), citing elements of a claim for negligence, including "conduct falling below the applicable standard of care amounting to a breach of . . . duty . . . ." Likewise, the Ameses can establish no breach of an implied warranty if they cannot prove a level of actinomycetes above that which is normal or acceptable. *See Dixon v. Mountain City Construction Co.*, 632 S.W.2d 538, 541-42 (Tenn. 1982), describing the implied warranty as warranting that the residence is "sufficiently free of major structural defects. . . ." Similarly, the Ameses cannot recover for fraudulent misrepresentation of they cannot establish that the moisture level in the crawlspace

3

resulted in an unacceptable level of actinomycetes in the home. *See Hiller v. Hailey*, 915 S.W.2d 800 (Tenn. App. 1995); *Metro. Gov't of Nashville v. McKinney*, 852 S.W.2d 233, 237 (Tenn. App. 1992). (To sustain a claim for fraudulent misrepresentation, plaintiff must prove, among other things, that her reliance on the misrepresentation caused her injuries.).

Reviewing the record in the light most favorable to the Ameses, it is undisputed that the level of actinomycetes in the Ameses home is below the normal or acceptable limits. Therefore, under any of the legal theories relied upon by the Ameses, the trial court properly granted summary judgment in favor of Phillips.

The decision of the trial court is affirmed. Costs of appeal are taxed to Appellants, for which execution may issue if necessary.

 

 

_____
                            **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

 

_____
**W. FRANK CRAWFORD, P. J., W.S.**

 

_____
**DAVID R. FARMER, J.**